## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LINDSEY C. HOLMES,** | Civ. No. 15-6834 (KM) |
| **Appellant,** | (Bankr. Case no. 15-14034) |
| **v.** | |
| **COMMUNITY HILLS CONDOMINIUM ASSOCIATION,** | **OPINION** |
| **Appellee.** | |

### KEVIN MCNULTY, U.S.D.J.:

The debtor, Lindsey C. Holmes, appeals from an order by Judge Rosemary A. Gambardella of the United States Bankruptcy Court for the District of New Jersey. (ECF No. 1-2) Judge Gambardella's Order denied confirmation of the debtor's modified plan and dismissed the voluntary petition for relief under Chapter 13 without prejudice.

This appeal presents a single issue: whether a condominium association lien is a security interest in the debtor's principal residence, and hence subject to the "anti-modification" clause, 11 U.S.C. § 1322(b)(2). That issue of law is reviewed *de novo*. *See In re American Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007); *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005). For the reasons set forth below, however, the decision of the bankruptcy court must be REMANDED for factual findings pertinent to that issue.

### I.   BACKGROUND

Ms. Holmes is a condominium unit owner; Community Hills is the condominium association. Community Hills claims a lien on Holmes's unit representing unpaid condominium assessments. The unit was on

the verge of a Sheriff's sale when, on March 9, 2015, Holmes filed a Chapter 13 petition.

Bank of America, which holds a mortgage on the unit, filed a proof of claim of $206,525.23. The value of the property was estimated at $85,000. There seems to be no dispute that the mortgage lien easily exhausts the equity in the property. Holmes filed a schedule showing a net disposable income of $200 per month. She proposed a plan whereby she would pay $200 per month.

Under the "anti-modification clause" of 11 U.S.C § 1322(b)(2), certain security interests relating to the debtor's principal residence cannot be modified. It follows that a plan that relies on the modification of such a principal-residence lien is not feasible as a matter of law; confirmation may therefore be denied without exploration of other pertinent issues. That is what happened here. The bankruptcy court held that Community Hills' lien on the condominium could not be modified, and therefore declined to confirm the plan. It is from that order that Holmes has appealed.

## II.    DISCUSSION

### A.    *Rones* and the N.J. Condominium Act

Holmes acknowledges that the Community Hills unit is her principal residence. She contends, however, that § 1322(b) nevertheless does not apply.

I am initially guided by *In re Rones*, 551 B.R. 162, 168 (D.N.J. 2016), in which Judge Wolfson discussed many of the issues presented here. *Rones* starts from the indisputable premise that a Chapter 13 plan may, in general, modify the rights of holders of secured claims. *See generally* 11 U.S.C. § 506(a)(1). A nominally secured claim will be considered unsecured, however, to the extent it exceeds the value of the collateral, and may be "stripped down" or "crammed" to that value. *See*

2

*United States v. Ron Pair Enters., Inc,* 489 U.S. 235, 239, 109 S. Ct. 1026 (1989).

Section 1322(b)(2) places an important limit on modification of secured claims. It prohibits modification, stripping, or cramming down of claims secured only by a security interest in the debtor's principal residence:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> ....
>
> (2) modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence,** or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims....

11 U.S.C. § 1322(b)(2) (emphasis added). *See Nobelman v. Am. Savings Bank,* 508 U.S. 324, 331–32, 113 S. Ct. 2106 (1993).

There is an exception to the exception—*i.e.,* an avenue of escape from the anti-modification clause of § 1322(b)(2). If the relevant lien, even one on a principal residence, is junior to a lien that exceeds the value of the residence collateral, it is treated as unsecured. Being wholly unsecured, it is of course not secured by a principal residence, and therefore does not fall under § 1322(b)(2). *See in re McDonald,* 205 F.3d 606, 613–14 (3d Cir. 2000); *Rones,* 551 B.R. at 168.

So whether a condominium association's lien for assessments is secured only by a security interest in the debtor's unit might depend (*inter alia*) on whether it is junior to another lien that exhausts the value of the collateral; if it is junior, it might not be secured by anything at all. On that question, *Rones* found the New Jersey Condominium Act to be dispositive. That statute gives the condominium lien a limited priority:

> a. The association shall have a lien on each unit for any unpaid assessment duly made by the association for a

share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees; provided however that an association shall not record a lien in which the unpaid assessment consists solely of late fees. ... Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.

b. A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens, except for municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:

(1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.

(2) With respect to a particular mortgage, to a lien recorded prior to: (a) the receipt by the association of a summons and complaint in an action to foreclose a mortgage on that unit; or (b) the filing with the proper county recording office of a lis pendens giving notice of an action to foreclose a mortgage on that unit.

(3) In the case of more than one association lien being filed, either because an association files more than one lien or multiple associations have filed liens, the total amount of the liens granted priority shall not be greater than the assessment for the six-month period specified in paragraph (1) of this subsection. Priority among multiple filings shall be determined by their date of recording with the earlier recorded liens having first use of the priority given herein.

(4) The priority granted to a lien pursuant to this subsection shall expire on the first day of the 60th month following the date of recording of an association's lien.

(5) A lien of an association shall not be granted priority over a prior recorded mortgage or mortgages under

this subsection if a prior recorded lien of the association for unpaid assessments has obtained priority over the same recorded mortgage or mortgages as provided in this subsection, for a period of 60 months from the date of recording of the lien granted priority.

(6) When recording a lien which may be granted priority pursuant to this act, an association shall notify, in writing, any holder of a first mortgage lien on the property of the filing of the association lien. An association which exercises a good faith effort but is unable to ascertain the identity of a holder of a prior recorded mortgage on the property will be deemed to be in substantial compliance with this paragraph.

For the purpose of this section, a "customary condominium assessment" shall mean an assessment for periodic payments, due the association for regular and usual operating and common area expenses pursuant to the association's annual budget and shall not include amounts for reserves for contingencies, nor shall it include any late charges, penalties, interest or any fees or costs for the collection or enforcement of the assessment or any lien arising from the assessment. The periodic payments due must be due monthly, or no less frequently than quarter-yearly, as may be acceptable to the Federal National Mortgage Association so as not to disqualify an otherwise superior mortgage on the condominium from purchase by the Federal National Mortgage Association as a first mortgage.

N.J. Stat. Ann. § 46:8B-21. Thus, under subsection (b), a condominium association's lien is granted priority to the extent of six months' worth of assessments. The condo lien, to that extent, is elevated to first priority. *Rones* reasoned that the condo lien was, at least to the extent of six months' assessments, secured by the principal residence, because it was senior to other liens. It followed, held *Rones,* that § 1322(b) applied.

Another issue arises. Assume *arguendo* that *more* than six months' assessments are in arrears. Under the NJ Act, the lien is senior only to the extent of six months' worth of assessments. Beyond that, it is junior—"subordinate," in the words of the statute. N.J. Stat. Ann. §

5

46:8B-21(a). Now it is possible to envision a rule that the lien should be bifurcated into a secured (up to six months) and unsecured (beyond six months) component. Thus bifurcated, it would have a hybrid quality; to the extent the lien is unsecured by the unit, it would not be subject to the "no-modification" rule of § 1322(b).

Case law forecloses that approach. The rule is applied broadly, and the exception strictly:

> [I]f even one dollar of a creditor's claim is secured by a security interest in a debtor's principal residence, then the entire claim—both secured and unsecured portions—cannot be modified under Section 1322. *See In re Vidal*, No.'s 12–11758, 12–12319, 12–12340, 12–12563, 2013 WL 441605, *3, 2013 Bankr. LEXIS 496, at *8 (Bankr. D. Del. Feb. 5, 2013) ("If there is even a single dollar of value available for the junior lienholder in the collateral, however, § 1322(b)(2) requires that the plan treat the junior claim as fully secured."); *see also In re Kennedy*, No. 12-11223, 2013 Bankr. LEXIS 2350, at *4 (Bankr. D. Del. June 10, 2013). This rule is known as the "one dollar rule."

*In re Rones*, 551 B.R. at 168.

Applying the "one dollar rule," *Rones* held that "because a portion of the Lien was secured by a security interest in the debtor's principal residence, no portion of the Association's lien could be stripped off under Section 1322." 551 B.R. at 171 (citing *In re McDonald*, 205 F.3d at 613–14).

### B.   Security interest vs. statutory lien

But hold on, says Holmes. The *Rones* analysis does not even come into play unless the lien at issue is a "security interest." Otherwise, § 1322(b)(2), by its plain language, does not apply at all.

A "security interest," as the term is used in § 1322(b)(2) and elsewhere, is defined as a "lien created by an agreement." 11 U.S.C. § 101(51). As such, it is to be distinguished from a "statutory lien," *i.e.*, one

"arising solely by force of a statute on specified circumstances or conditions." [1] The categories are mutually exclusive. *See In re Young,* 477 B.R. 594 (W.D. Pa. 2012).

*Rones,* says Holmes, did not squarely face that definitional issue. Indeed, it appears that *Rones* accepted the conclusion of the bankruptcy court that the lien was created by agreement: "[T]he Bankruptcy Court itself observed when determining whether the Lien was consensual or statutory, [that] the Condominium Act did not create the Lien—it was created by the Master Deed .... [T]he Condominium Act merely altered the priority of a portion of the Lien." 551 B.R. at 171.

But the NJ Act seemingly *can* operate to create a lien; consider the language of N.J. Stat. Ann. § 46:8B-21(a), quoted above ("The association shall have a lien on each unit for any unpaid assessment ... upon proper notice to the appropriate unit owner"). And the subsection (b) priority operates to elevate, not just any old lien, but "[a] lien recorded pursuant to subsection a."

So it is not so simple to say that there is a security interest (*i.e.,* one arising from agreement), as to which the Act merely sets a priority. Remember, the condominium association's lien is secured by the unit (which is underwater on its mortgage) *only* to the extent it can be regarded as senior to the mortgage. So the priority issue under the State Act is inextricably intertwined with the issue of whether the lien is

---

[1]     (53) The term "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53).

    The other possibility, not relevant here, is a "judicial lien," *i.e.,* one "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

secured by the unit *at all*.

There is more. The § 1322(b) no-modification rule applies to a lien secured *only* by a security interest (*i.e.,* a contractual lien). But this lien, says Holmes, is *also* secured by a statutory lien, defined as one that arises "*solely* by force of a statute." Those dueling claims of exclusivity seem to reinforce the notion that the contractual and statutory liens, assuming both are present, must be considered separately.

The case law has meandered as to whether a condominium lien like this one is a statutory or consensual one. *See In re Rones,* 531 B.R. 526 (Bankr. D.N.J. 2015) (surveying case law), *rev'd,* 551 B.R. 162 (D.N.J. 2016). As the Bankruptcy Court observed in *Rones,* the issue may depend on how and when a lien arose. A consensual lien arises from the purchase of the unit, but depends on other facts, such as the content of the master deed and presumably the existence of an arrearage. A statutory lien, too, depends on facts such as the filing of the master deed, notice to the unit holder, and recordation. And the operation of priority rules, particularly where the mortgage exceeds the value of the property, will determine whether the lien is secured at all.

I think that the bankruptcy court should have first crack at these issues. Some of these ramifying issues may be mooted by a clear set of facts. Here, says Holmes, by contrast with *Rones,* the bankruptcy court never made a finding as to whether this lien was created by contract or only by statute. Community Hills did not submit the master deed or by-laws for the court's consideration. It is not clear that a security interest, in the sense of a lien arising by contract, perfected and secured by equity in the unit, even exists. To determine that, the bankruptcy court must make specific findings as to the facts and determine the priority of such a security interest.

The parties have not pointed this court to any facts about the

creation or perfection of any contractual lien, notice to the unit holder under the State Condominium Act, recordation, or other pertinent facts. Rather, the facts and contentions seem to have evolved and tumbled out over the course of multiple attempts by the debtor to propose a feasible plan. It is not at all clear that the bankruptcy court was given a fair opportunity to assess the issues.

## III.   CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is reversed and remanded for further consideration. The parties shall present the matter to the bankruptcy judge in a manner that permits the judge to make factual findings as to the existence, priority, and recordation of (a) any security interest; (b) any statutory lien; (c) the priority of such; and (d) relatedly, whether any such lien is secured by equity in the property. I express no view as to whether, even if all of these issues were decided favorably to the debtor, the plan would be a feasible and confirmable one.

Dated: September 16, 2016

**Kevin McNulty**
**United States District Judge**